UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GAIL THOMPSON-ALLEN,  )<br>    *Plaintiff*,   )<br>  )<br>v.   )<br>  )<br>RUSSELL LIBRARY,   )<br>    *Defendant*.   ) | 3:23-CV-1671 (SVN)<br><br><br><br><br><br>August 14, 2024 |

**<u>ORDER GRANTING MOTION TO DISMISS</u>**

Sarala V. Nagala, United States District Judge.

    Plaintiff Gail Thompson-Allen, a private citizen and former employee of Defendant Russell Library, criticized the Library's director and administration at a budget meeting of the City of Middletown Common Council in April of 2022. She claims that, following her comments, she faced retaliation in the form of threats of legal action. She now brings a two-count complaint against Defendant, alleging retaliation in response to her exercise of free speech, and seeking a declaratory judgment that the First Amendment protected her comments.

    Defendant has moved to dismiss the Amended Complaint in its entirety, arguing that Plaintiff has not adequately pleaded any of the elements of a First Amendment retaliation claim and that the declaratory judgment count should be dismissed as anticipatory.

    For the reasons stated below, the Court GRANTS the Defendant's motion to dismiss because, primarily, Plaintiff has failed to adequately plead a chilling effect resulting from Defendant's actions. The Court also declines to exercise supplemental jurisdiction over Plaintiff's declaratory judgment claim. The Court will allow Plaintiff the opportunity to file a Second Amended Complaint.

I.      FACTUAL BACKGROUND

The following facts are taken from Plaintiff's amended complaint and assumed to be true for purposes of this ruling. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]

Plaintiff Gail Thompson-Allen is a former employee of Russell Library. Am. Compl., ECF No. 17, ¶ 1. On April 19, 2022, Thompson-Allen spoke during the public comment period of the City of Middletown Common Council budget meeting. *Id*. Her comments criticized the Library's director and administration for what Plaintiff viewed as "skewed budget priorities, including administrative salary increases." *Id*. ¶¶ 1, 3. Two of her statements were as follows: (1) "[i]n her zero increase budget for fiscal year 2022-2023, she [Library Director Ramona Burkey] increased her and her two assistant[s' salaries] by 6.25%, which totals up to about $25,500. She also increased other administrative staff salaries respectively by 7.9%, 15.5% and 18.8%, which all totaled comes to approximately $55,000"; and (2) "that the Library and its Director have [] increased the number of administrative positions at the Library." *Id*. ¶ 3. Plaintiff maintains that these statements were "taken out of context" but does not deny that she said them. *See id*. Plaintiff's complaint only alleges those two statements, and not the full scope of her comments at the budget meeting. *Id*.

In response to the totality of Plaintiff's comments at the budget meeting, Plaintiff received a letter from an attorney for Defendant, Michael Spagnola, demanding the immediate retraction of her "maliciously false and defamatory" statements (the "Retraction Letter").[2] *Id*. ¶¶ 2–3, 5. The

---

[1] Plaintiff's original complaint included a claim of prior restraint in addition to claims for retaliation and declaratory judgment. ECF No. 1. Defendant moved to dismiss that complaint. ECF No. 14. In response to the motion to dismiss, Plaintiff filed the Amended Complaint, which dropped the prior restraint claim. *See* ECF No. 17. Defendant opted to apply its motion to dismiss to the retaliation and declaratory judgment counts of the Amended Complaint. *See* ECF Nos. 18, 19.

[2] Defendant has included the Retraction Letter as an exhibit to its motion to dismiss. *See* Def.'s Mot. to Dismiss Ex. A, ECF No. 14-2. The Court agrees with Defendant that the Retraction Letter is incorporated by reference into the Amended Complaint given that it is directly quoted therein, *see* Am. Compl. ¶¶ 2–5.

Retraction Letter also demanded that she not make any "further defamatory statements about the Library, its Administration, and its Director." *Id.* ¶ 5. The Retraction Letter specifically quoted the Plaintiff's statements above, which mention salary increases and the increase of administrative positions. *Id.* ¶ 3. The Letter claimed that Plaintiff's comments subjected her to "significant" compensatory and punitive damages. *Id.* ¶ 4.

Another individual named Ann Smith also spoke at the budget meeting and raised similar concerns. *Id.* ¶ 6. When Plaintiff found out that Smith had received a similar letter from Attorney Spagnola, Plaintiff retained counsel. *Id.* ¶ 7. Attorney Luby, Plaintiff's counsel, responded to Defendant's Retraction Letter on May 19, 2022, refuting the claim that Plaintiff's statements were defamatory and asserting that she was constitutionally protected in making them. *Id.* ¶ 7. Attorney Luby also stated that Russell Library was attempting to intimidate Plaintiff and suppress constitutionally protected criticisms of the Library, as well as chill public debate by threatening her with economic loss. *Id.* ¶¶ 8–9. Attorney Luby requested that Defendant and its director apologize to Plaintiff and confirm that she would not be sued. *Id.* ¶ 9. On June 2, 2022, Attorney Spagnola responded, stating that Defendant would neither issue an apology to Plaintiff nor confirm that it would not pursue legal action against her. *Id.* ¶ 11. After receiving this letter, Plaintiff "remained in a constant state of apprehension over being sued at any time by Russell Library." *Id.* ¶ 12.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a cognizable claim, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.   DISCUSSION

The Court concludes that Plaintiff has not stated a plausible claim for retaliation regarding her statements from the meeting which are quoted in the Amended Complaint, as chilling of her First Amendment rights is not adequately pleaded. The Court also declines to exercise supplemental jurisdiction over Plaintiff's declaratory judgment claim, which lacks an independent basis for subject matter jurisdiction.

4

    A.   <u>Count One:  Retaliation</u>

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  Generally speaking, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech."  *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks and citation omitted).  First Amendment retaliation claims outside of the prison context generally fall into two categories:  claims made by public employees and claims made by private citizens.  *See Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) (describing elements of First Amendment claim in all three factual contexts); *see also Kaminsky v. Schriro*, No. 3:14-CV-01885 (MPS), 2016 WL 3460303, at *11 (D. Conn. June 21, 2016) ("[T]he Second Circuit has fashioned differing elements when the plaintiff has been a prisoner, a public employee, and a private citizen.").

A private citizen seeking to prevail on a First Amendment retaliation claim must demonstrate that (1) she has an interest protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by her exercise of that right; and (3) the defendant's actions effectively chilled the exercise of her First Amendment right.  *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001).  A private citizen's speech need not be "on a matter of public concern for it to fall within the protection of the First Amendment."  *Williams*, 535 F.3d at 77.  Defendant claims that none of the three prongs of a First Amendment retaliation claim have been met by the allegations in the Amended Complaint; thus, the Court addresses each in turn.

First, the Court finds that Plaintiff's statements at the budget meeting, insofar as they are reproduced in the Amended Complaint, sufficiently allege protected First Amendment speech.[3] The context of Plaintiff's remarks—the public comment period of a public meeting—and the content of her remarks—increased spending on administrative salaries, which Plaintiff viewed as reflecting "skewed" budgetary priorities—lend support for this conclusion. First, Plaintiff had a First Amendment right to "speak during the public comments portion" of a local meeting, on the topic of that meeting, and not face retaliation for doing so. *See McKenna v. Nassau Cnty.*, No. 2:23-CV-4286 (ARR) (ST), 2023 WL 8455670, at *9 (E.D.N.Y. Dec. 6, 2023) (finding that plaintiff had adequately alleged he had a First Amendment right to speak during the public comment period of a legislative meeting); *Potanovic v. Town of Stony Point*, 651 F. Supp. 3d 677, 682 (S.D.N.Y. 2023) ("To be sure, the activity of speaking at Town Board meetings, within the purpose for which the limited public forum was opened, is protected speech."). And, although Plaintiff's speech need not have touched on a matter of public concern, *see Williams*, 535 F.3d at 77, her alleged speech meets this standard. "The right to criticize public officials is at the heart of the First Amendment's right of free speech." *Kaluczky v. City of White Plains*, 57 F.3d 202, 210 (2d Cir. 1995) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 282 (1964)). Furthermore, "[c]itizens are encouraged to speak out on matters of public concern and are constitutionally protected when they exercise that right." *Id.* (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)). In general, there are only limited classes of speech which do not fall within the ambit of First Amendment protection, such as "the lewd and obscene, the profane, the libelous, and the

---

[3] The Court limits its holding to the two statements alleged with specificity in the Amended Complaint. *See* Am. Compl. ¶ 3. The Court notes that, while Defendant's motion to dismiss has been pending, Plaintiff moved for a speedy hearing of her declaratory judgment claim under Federal Rule of Civil Procedure 57. *See* ECF No. 31. Plaintiff attached to that motion a copy of the full remarks she allegedly delivered at the budget meeting. *See* ECF No. 31-1. As the remarks were not included in the Amended Complaint, but were only belatedly included in Plaintiff's motion for a speedy hearing, the Court has not considered them for purposes of deciding Defendant's motion to dismiss.

insulting or 'fighting' words," none of which clearly apply here. *See Williams,* 535 F.3d at 77 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942)).[4] The quotes from Plaintiff's speech included in the Amended Complaint are protected under this standard.

The second prong of the First Amendment retaliation analysis focuses on whether the defendant's actions were "motivated or substantially caused by" Plaintiff's exercise of her First Amendment right. At the motion to dismiss stage, it is sufficient to allege "facts from which a retaliatory intent on the part of the defendants reasonably may be inferred," since a defendant's motive and intent may be "difficult to plead with specificity in a complaint." *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994); *see also Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 240 (E.D.N.Y. 2009) (finding that the question of defendant's motivation "is not one that can be decided in the context of a motion to dismiss").

Plaintiff's Amended Complaint alleges, through its reproduction of correspondence between the parties, that Defendant's Retraction Letter threatening a potential defamation action was sent "in order to suppress constitutionally-protected criticism," and that Defendant's actions were motivated by Plaintiff's exercise of free speech. Am. Compl. ¶¶ 8, 14. While these allegations are no doubt thin, the Court declines to dismiss Plaintiff's Amended Complaint on this basis given that Plaintiff clearly alleges that Defendant sent its letter in response to Plaintiff's comments at the budget meeting, which the Court has found were protected, and general averments of motivation are sufficient to survive a motion to dismiss on this element. *See Puckett*, 631 F. Supp. 2d at 240. The question of whether Defendant was instead motivated by a belief that

---

[4] Defendant suggests throughout its motion to dismiss, but not does directly argue, that Plaintiff's speech was defamatory. *See, e.g.*, Def.'s Mot. to Dismiss, ECF No. 14-1 at 14 (suggesting Plaintiff must demonstrate that she "desired to engage in non-defamatory speech related to [Defendant]"). This is insufficient to change the Court's conclusion at this juncture, given that the statements are not defamatory on their face and Defendant has not advanced the argument directly.

Plaintiff's comments were defamatory, as suggested by the Retraction Letter, *see* ECF No. 14-2, is a factual question not suitable to resolution on a motion to dismiss. *See Puckett*, 631 F. Supp. 2d at 240.

To meet the third prong of a First Amendment retaliation claim, Plaintiff must allege that the Defendant's actions effectively chilled the exercise of her First Amendment right. *Curley*, 268 F.3d at 73. To satisfy this burden, Plaintiff must allege either "facts showing [Defendant] 'silenced [her],' or some actual chilling effect . . . that is neither 'conclusory' nor 'speculative.'" *See Kaminsky*, 2016 WL 3460303, at *12 (internal citations omitted).

Here, Plaintiff has failed to sufficiently allege chill under either theory. Plaintiff alleges that she remained in a "constant state of apprehension over being sued at any time" by Defendant, and then states in a conclusory manner that "Defendant's actions effectively chilled Plaintiff's exercise of her First Amendment right to Free Speech." *See* Am. Compl. ¶¶ 12, 15. But she fails to provide any factual allegations plausibly suggesting that she was somehow silenced or chilled by Defendant's actions. *See Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (affirming dismissal of First Amendment claim where complaint "offered nothing beyond a bare assertion" that a lawsuit filed against the plaintiff had chilled his speech, where the plaintiff did not allege that he declined to write further editorials or "changed even one word of his writing" to tone it down following the suit); *see also Curley*, 268 F.3d at 73 ("Where a party can show no change in [her] behavior, [she] has quite plainly shown no chilling of [her] First Amendment right to free speech."); *Traylor v. Parker*, No. 3:13-CV-01828 (AWT), 2015 WL 1268304, at *7 (D. Conn. Mar. 19, 2015) (dismissing complaint for failure to allege that defendant's actions chilled plaintiff's "*exercise of his First Amendment rights* or caused him a concrete harm") (emphasis added); *cf. Lederman v. Benepe*, No. 12 Civ. 6028 (PGG), 2014 WL 1318356, at *10 (S.D.N.Y.

8

Mar. 28, 2014) (holding plaintiff had stated a plausible First Amendment retaliation claim where complaint alleged that plaintiff had "'curtailed his expression' because he feared future arrest"). Without *any* factual allegations about how her speech was silenced or chilled, Plaintiff has not adequately pleaded this element of her retaliation claim.[5]

Moreover, Plaintiff does not plausibly allege any concrete harm outside of a chilling effect. *See Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011) (recognizing that, where chilling is not alleged, "other forms of tangible harm" will satisfy the injury requirement for standing purposes). Plaintiff alleges that she fears she will be sued, and has experienced "emotional distress, anxiety, anger, fear, and a feeling of helplessness," in addition to "economic loss in the form of the legal fees" she paid to her attorney to respond to Defendant's letter. Am. Compl. ¶¶ 12, 16, 17. With respect to the threat of litigation, neither Plaintiff nor the Court has identified any authority suggesting that the threat of litigation in itself is a sufficiently concrete harm. *See, e.g.*, *Colombo v. O'Connell*, 310 F.3d 115, 117–18 (2d Cir. 2002) (recognizing, in the context of summary judgment, that plaintiff who had been threatened with suit did not need to allege she was silenced, but had failed to allege an "actual, non-speculative chilling effect" nonetheless, rendering defendant's actions "harmless"). Even the initiation of actual litigation may not be enough, if the

---

[5] In an attempt to argue that Plaintiff's speech was not chilled, Defendant argues that Plaintiff made additional comments at a City of Middletown Common Council meeting on July 14, 2022—after receiving the Retraction Letter. *See* ECF No. 14-1 at 12–13. Defendant's opening brief cited no source for these alleged comments, though in its reply brief, it argues that the Court should take judicial notice of the video of the July meeting, which is available on the Internet. *See* Def's. Reply Br., ECF No. 30 at 2–3. As this request was raised for the first time in reply, the Court declines to take judicial notice of the video of the meeting. *See Cadoret v. Sikorsky Aircraft Corp.*, 323 F. Supp. 3d 319, 326 n.7 (D. Conn. 2018) (where there is no apparent reason a party could not make a particular argument in its opening papers, it is deemed waived if raised for the first time in a reply brief) (collecting cases). Because the Court declines to take judicial notice of the video, Plaintiff's alleged comments from the July meeting are not appropriate for the Court to consider on this motion. The Court notes, however, that to the extent Plaintiff did speak out in criticism of Defendant at a subsequent public meeting, this would significantly undermine any allegations of actual chill. *See, e.g.*, *Williams*, 535 F.3d at 78 (where plaintiff's conduct showed "readiness to hold forth on his perceived mistreatment" that was "unimpaired," plaintiff could not show his speech "was either silenced or chilled"); *see also Dingwell v. Cossette*, No. 3:17-CV-01531 (KAD), 2020 WL 5820363, at *5 (D. Conn. Sept. 30, 2020) (deciding, at summary judgment, that plaintiff's continued criticism of defendant demonstrated there was no triable issue as to chill).

9

plaintiff does not allege her First Amendment right were chilled. *See Spear*, 954 F.2d at 67 (finding that plaintiff had failed to allege chilling effect even after actually being sued).

Likewise, even though the Second Circuit does not appear to have decided whether "allegations of emotional and psychological harm" can establish a compensable First Amendment injury, it is clear that "cursory" allegations of such harm, like Plaintiff's here, are insufficient. *See Zherka*, 634 F.3d at 646–47.

Lastly (and again, having been provided no contrary authority by Plaintiff), the Court does not find that incurring an economic loss due to the retention of an attorney to respond to the alleged First Amendment retaliation can sufficiently allege the third element of a retaliation claim, at least for purposes of surviving a motion to dismiss. If this were the case, then a First Amendment retaliation claim could almost automatically proceed in every instance where a plaintiff hired an attorney prior to the filing of a lawsuit. *See Kaminsky*, 2016 WL 3460303, at *12 (rejecting argument that the plaintiff's filing of retaliation lawsuit could demonstrate a chilling effect since all plaintiffs would then "inherently satisfy the actual chilling requirement," and stating that the filing of a lawsuit "does not in itself defeat his claim that he has been chilled, but it also does not itself satisfy the element of actual chilling").

In sum, because Plaintiff's speech does not plausibly allege the third prong of a First Amendment retaliation claim, Defendant's motion to dismiss Plaintiff's retaliation claim is GRANTED.

B. Count Two: Declaratory Judgment

In Count Two of her Amended Complaint, Plaintiff seeks a declaratory judgment "establishing the lawfulness of her statements at the budget meeting and thus that there would be no grounds for holding her liable to any party under any legal theory for having made the

10

statements." Am. Compl. ¶ 21. She alleges there is an "actual controversy" between the parties due to the threat of legal action which has never been retracted, and that a declaratory judgment will "settle the legal issues involved . . . thus freeing her from the state of apprehension over being sued" by Defendant. *Id.* ¶¶ 18–19.

Under the Declaratory Judgment Act, in a "case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Second Circuit has been clear that the Declaratory Judgment Act "does not *expand* the subject-matter jurisdiction of the federal courts." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (emphasis in original) (citation omitted) (cleaned up).

The Court declines to exercise supplemental jurisdiction over Plaintiff's claim for declaratory judgment. Initially, the Court notes that, to the extent Plaintiff seeks a declaratory judgment protecting her from "*any* party" holding her liable on "*any* theory," this request is far too broad, on the record before the Court, for the Court to conclude that it possesses jurisdiction to render a declaratory judgment that would not create friction between sovereign legal systems or encroach on another court. *See Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 415 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003) (noting plaintiff's request for declaratory judgment was "expansive," and analyzing the uncertainty and differences in foreign law). Nonetheless, given that Plaintiff's Amended Complaint alleges Defendant threatened her with a defamation suit, *see* Am. Compl. ¶ 4, and that the parties' briefing appears to understand Plaintiff seeks a declaratory judgment regarding a potential defamation claim, *see, e.g.*, ECF No. 14-1 at 18, ECF No. 27 at 8, the Court will analyze Plaintiff's declaratory judgment count with respect to this narrower request for relief.

The Court concludes that it does not have subject-matter jurisdiction over the declaratory judgment claim, which essentially requests a determination regarding Plaintiff's defense to a state cause of action for defamation. As the Supreme Court has noted:

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim.

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242 (1952); *see also Dow Jones*, 237 F. Supp. 2d at 426 (quoting same and declining to issue declaratory judgment relating to First Amendment defense to foreign libel action). Here, Plaintiff seeks a declaratory judgment relating to an allegedly threatened and anticipated defamation action, which would be brought under state tort law and thus not confer federal question jurisdiction—even if Plaintiff's defense may present a federal question. *See Don King Prods., Inc. v. Hopkins*, No. 04 CIV. 9705 (PKL), 2005 WL 1053336, at *5, *9 (S.D.N.Y. May 4, 2005) ("Accordingly, because any claims threatened by defendants were state tort claims, [plaintiff's] first cause of action for declaratory judgment does not confer subject matter jurisdiction upon this Court."). In addition, the parties here are not diverse, Am. Compl. at 1, so the Court does not appear to possess diversity jurisdiction. As the Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction, the Court lacks subject matter jurisdiction over Plaintiff's declaratory judgment claim.

In similar circumstances, courts have analyzed orphaned declaratory judgment claims through the lens of supplemental jurisdiction. *See 835 Hinesburg Rd., LLC v. City of S. Burlington*, No. 5:22-CV-58, 2023 WL 2169306, at *12 (D. Vt. Jan. 27, 2023), *aff'd*, No. 23-218, 2023 WL 7383146 (2d Cir. Nov. 8, 2023) (declining to exercise supplemental jurisdiction over declaratory

judgment claim after dismissing all federal claims); *see also Morton v. Cnty. of Erie*, 796 F. App'x 40, 44 (2d Cir. 2019) (summary order) (affirming district court's decision to decline to exercise supplemental jurisdiction over state law and declaratory judgment claims after granting summary judgment to defendant on federal claims). A district court may decline to exercise supplemental jurisdiction over a claim that forms part of the same case or controversy as a claim having original jurisdiction if, among other circumstances, the district court has dismissed all claims over which it has original jurisdiction and the values of judicial economy, convenience, fairness, and comity weigh in favor of declination. 28 U.S.C. § 1367(c)(3); *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018).

Here, the Court has dismissed the only claim over which it had original jurisdiction, and it declines to exercise supplemental jurisdiction over the declaratory judgment claim. The case is in its early stages and the Court cannot conclude that considerations of judicial economy, convenience, fairness, or comity weigh in favor of continuing to exercise supplemental jurisdiction. As explained above, the declaratory judgment Plaintiff seeks would be presented as a defense to a tort claim brought under Connecticut law, if Defendant were to sue Plaintiff for defamation. The state courts would be well-equipped to assess this defense, should it arise in litigation. The Court therefore declines to exercise supplemental jurisdiction over the declaratory judgment claim at this procedural juncture.

Plaintiff is free, however, to attempt to restate the declaratory judgment claim in a Second Amended Complaint, provided it has an independent basis for subject matter jurisdiction or properly falls within the Court's supplemental jurisdiction.

## IV. CONCLUSION

For the reasons described in this order, Plaintiff's Amended Complaint is dismissed. The Court will provide Plaintiff leave to amend to remedy the deficiencies identified in this order. Any Second Amended Complaint must be filed by **September 4, 2024**.

Because Plaintiff's Amended Complaint is dismissed in full, her motion for a speedy hearing on her declaratory judgment claim, ECF No. 31, is denied as moot.

**SO ORDERED** at Hartford, Connecticut, this 14th day of August, 2024.

                                         */s/ Sarala V. Nagala*
                                         SARALA V. NAGALA
                                         UNITED STATES DISTRICT JUDGE